IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| EDWARDS MOVING & RIGGING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:12 cv146 |
| | ) | |
| WILL WHITE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT W.O. GRUBB STEEL ERECTION INCORPORATED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

COMES NOW defendant W.O. Grubb Steel Erection Incorporated ("Grubb"), by counsel, and in support of its Motion to Dismiss Plaintiff's Complaint in the captioned matter pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, states the following:

**INTRODUCTION**

In this diversity action, Plaintiff seeks to force Grubb to fire its employee, Will White ("White"), and obtain damages against Grubb and White based on a non-competition agreement ("the restrictive covenant") entered into between Plaintiff and White. Plaintiff's sole claim against Grubb is for tortious interference with the restrictive covenant.

Plaintiff is a Kentucky corporation with its principal place of business in Kentucky. The agreement containing the restrictive covenant was allegedly signed by White while White was employed by Plaintiff in Kentucky. White now resides in Virginia and is employed in Virginia by Grubb, a Virginia corporation.

1

Plaintiff claims that it is in the business of transporting and lifting heavy and oversized items in a market area that currently includes Kentucky, Maryland, North Carolina, Pennsylvania, Tennessee, West Virginia and Virginia. Plaintiff alleges that Grubb offers heavy hauling and rigging services in the same states and is a direct competitor of Plaintiff and that White's employment with Grubb violates the restrictive covenant.

The restrictive covenant states that it will be "construed under and governed by the laws of the Commonwealth of Kentucky, excluding its conflicts of law rules". The applicable substantive law of Kentucky governing restrictive covenants in employment agreements is contrary to Virginia's public policy, and therefore Kentucky law cannot apply to the interpretation and validity of the covenant on which Plaintiff bases this action. Because the restrictive covenant is unenforceable and against public policy under Virginia law, the Complaint fails to state a claim and must be dismissed.

## RULE 12(b)(6) MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed 2d 929, 949 (2007). Exhibits attached to the Complaint may be considered without converting a Rule 12(b)(6) motion into a summary judgment motion. Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004). In a suit to enforce a non-competition agreement, an invalid underlying restrictive covenant renders the Complaint insufficient. Cantol, Inc. v. McDaniel, 2006 U.S. Dist. LEXIS 24648 at 21 (E.D. Va. 2006).

## LAW APPLICABLE IN DIVERSITY ACTIONS

Because the basis of this Court's jurisdiction is diversity of citizenship, the Court must apply the substantive law of the state in which it sits, Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), including that state's conflicts of law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487 (1941).

### Virginia Conflict of Law Rules Dictate that Virginia Law Must Be Applied to Determine the Enforceability of the Restrictive Covenant at Issue.

Under Virginia's conflict of law rules, the nature, validity, and interpretation of contracts are generally governed by the law of the place where the contract was made. See C.I.T. Corp v. Guy, 170 Va. 16, 22, 195 S.E. 659, 661 (1938). If the parties designate in their contract that the law of a specific jurisdiction governs the validity of the contract, that law typically will be applied instead. Black v. Powers, 48 Va. App. 113, 628 S.E.2d 546, 554 (2006).

Giving effect to the law of a foreign jurisdiction is based upon grounds of comity. See C.I.T. Corp, 170 Va. at 22, 195 S.E. 2d at 661. As the Virginia Supreme Court has recognized, however, "(c)omity does not require the application of another state's substantive law if it is contrary to the public policy of the forum state." Willard v. Aetna Casualty and Surety Co., 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); see M.C. Const. Corp. v. Gray Co., 17 F. Supp. 2d 541, 546 (W.D. Va. 1998) (holding that a choice of law provision that applied Kentucky law would not be enforced because the Virginia Arbitration Act expressed a policy that disputes arising from construction contracts which are to be performed in Virginia should be resolved in Virginia).

Thus, the substantive law of another state will be applied in Virginia only if it does "not contravene public policy", C.I.T. Corp, 170 Va. at 22, 195 S.E.2d at 661, or is "not inconsistent with the laws or policy of [Virginia]." State of Maryland v. Coard, 175 Va. 571, 578, 9 S.E.2d

3

454, 457 (1940); see Doulgeris v. Bambacus, 203 Va. 670, 673, 127 S.E.2d 145, 148 (1962) ("it is equally well settled that foreign law or rights based thereon will not be given effect or enforced if contrary to the settled public policy of the forum"); Black, 48 Va. App. at 129, 628 S.E.2d at 554 ("if the applicable substantive law of the jurisdiction where the contract was executed is contrary to Virginia public policy, Virginia courts will not apply the foreign rule of law.").

Restrictive covenants in employment agreements are disfavored under Virginia law and are subject to strict drafting requirements. Thus, such a covenant will only be enforced if the employer establishes that it is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy. Omniplex World Services Corp. v. US Investigation Services, Inc., 270 Va. 246, 250, 618 S.E.2d 340, 342 (2005). As this Court noted even subjecting an employee to "uncertainty" over the scope of a covenant not to compete "offends sound public policy." Power Distributors, Inc. v. Emergency Power Emergency, Inc., 569 F. Supp. 54, 58 (E.D. Va. 1983) (quoting Meissel v. Finley, 198 Va. 577, 580, 95 S.E.2d 186, 188 (1956)).

Restrictive covenant jurisprudence in Virginia is clear: courts do not reform, redraft or (as it is commonly known) "blue-pencil" restrictive covenants. This long-standing public policy has been endorsed by numerous Virginia courts. See, e.g., Daston Corp. v. MiCore Solutions, Inc., 80 Va. Cir. 611 (Fairfax 2010); BB&T Insur. Services, Inc. v. Thomas Rutherfoord, Inc., 80 Va. 174 (Richmond 2010); Lasership, Inc. v. Watson, 79 Va. Cir. 205 (Fairfax 2009); Strategic Enterprise Solutions, Inc. v. Ikuma, 77 Va. Cir. 179 (Fairfax 2008); Better Living Components, Inc. v. Coleman, 67 Va. Cir. 221 (Albemarle Co. 2005); Pace v. Ret. Plan Admin. Serv., Ltd., 74 Va. Cir. 201 (Richmond 2007); Cliff Simmons Roofing, Inc. v. Cash, 49 Va. Cir. 156

(Rockingham Co. 1999); Nida v. Business Advisory Systems, Inc., 44 Va. Cir. 487 (Winchester City 1998); Pais v. Automation Products, Inc., 36 Va. Cir. 230 (Newport News 1995); Northern Virginia Psychiatric Group, P.C., v. Halpern, 19 Va. Cir. 279 (Fairfax 1990).

This public policy has also been acknowledged and followed by U.S. District Courts for both the Eastern and Western Districts of Virginia. See Lanmark Tech., Inc. v. Canales, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006); Roto-Die, Inc. v. Lesser, 899 F. Supp. 1515, 1523 (W.D. Va. 1995). As the Court in Roto-Die noted in quoting Fourth Circuit precedent, under Virginia law, restrictive covenants are "judged as a whole and must stand or fall when so judged." 899 F. Supp. at 1523 (quoting Alston Studios, Inc. v. Lloyd V. Gress & Assocs., 492 F. 2d 279 at 284 (4th Cir. 1974).

Blue-penciling is so repugnant to Virginia public policy that non-compete agreements containing a "savings" clause or similar language that authorizes a court to reform or modify an otherwise unenforceable covenant are deemed invalid as against public policy. See, e.g., Northern Virginia Psychiatric Group, 19 Va. at 282; BB&T Insur. Services, 80 Va. at 181; Pace, 74 Va. Cir. at 205.

Virginia's public policy against blue-penciling restrictive covenants is based upon both a state constitutional law concern and Virginia' policy that such covenants should be construed against the employer and only narrowly enforced. The Contract Clause of the Virginia Constitution, Article I, § 11, imposes limits on the State's power to abridge existing contracts. Because blue penciling necessarily alters the parties' existing contract, any State action authorizing or condoning such impairment would violate the Contract Clause. See Northern Virginia Psychiatric Group, 19 Va. Cir. at 281-82 (finding that "[t]he 'blue pencil' rule also conflicts with the Virginia Constitutional clause prohibiting interference with contracts.")

5

Under Virginia law, restrictive covenants are disfavored restraints on trade. Omniplex, 270 Va. at 249, 618 S.E.2d at 342. Thus, courts will not "entertain the notion that these disfavored restraints on trade should be reformed by the judiciary", Strategic Enterprise Solutions, Inc., 77 Va. Cir. at 185, "edit by selective enforcement", Cliff Simmons Roofing, Inc., 49 Va. Cir. at 158, or "become the employer's scrivener." Northern Virginia Psychiatric Group, 19 Va. at 281-82.

Blue penciling of restrictive covenants is therefore repugnant to Virginia law because it encourages employers to draft overbroad covenants and thereby create "an 'in terrorem effect' whereby an employee must try to interpret the legal enforceability of an ambiguous provision in order to decide whether it is prudent to accept a particular job." Lasership, Inc., 79 Va. Cir. at 216-17 (citing Lanmark, 454 F. Supp. 2d at 529).

**Kentucky Law on Non-Compete/Restrictive Covenants Violates Virginia's Public Policy**

In stark contrast to Virginia's view of restrictive covenants, Kentucky views restrictive covenants as "a valuable business tool." Hammons v. Big Sandy Claims Servs., Inc., 567 S.W.2d 313, 315 (Ky. App. 1978). The validity of such covenants is assumed "prima facie," Crowell v. Woodruff, 245 S.W.2d 447, 449-50 (Ky. App. 1951), and "[t]here is no basic policy against such covenants . . . [i]n fact, the policy of [Kentucky] is to enforce them unless very serious inequities would result." Hall v. Willard & Woolsey, P.S.C., 471 S.W.2d 316, 318 (1971) (quoting Lareau v. O'Nan, 355 S.W.2d 679, 681 (1962).

Moreover, under Kentucky law, "[w]here the covenant as originally drawn has been found too broad, courts have no difficulty in restricting it to its proper sphere and enforcing it only to that extent." Hammons, 567 S.W.2d at 315; accord Kegel v. Tillotson, 297 S.W.3d 908, 913 (Ky. App. 2009) (noting "our courts have adopted a 'blue pencil' rule, whereby we are

empowered to reform or amend restrictions in a non-compete clause if the initial restrictions are overly broad or burdensome").

Virginia's strict public policy disfavoring restrictive covenants and rejecting blue penciling stands in stark contrast to Kentucky's public policy of searching for ways to enforce such covenants, even to the point of having its judges re-write otherwise invalid covenants. In an analogous case, the Court of Appeals for the Fifth Circuit found that Georgia's policy against blue penciling was a sufficient reason for not applying the law of the state specified in the parties' choice of law provision to determine the validity of a restrictive covenant. In Dothan Aviation Corp. v. Miller, 620 F.2d 504 (Fifth Cir. 1980), the parties' agreement provided that the covenant at issue would be governed by Alabama law. The issue before the Court was whether to apply Alabama or Georgia law to determine the validity of the covenant.

Georgia's conflict rules and its substantive law governing restrictive covenants are very similar to Virginia's. Like Virginia, Georgia will apply the parties' choice of law unless the application of the chosen law would contravene a policy of Georgia. Also like Virginia, Georgia has a strict policy against judicial re-drafting of restrictive covenants. As the Fifth Circuit noted, such covenants "should be enforced as written or not at all . . . [and Georgia's] refusal to apply the blue pencil theory is based upon its policy determination that the theory presents too great a chill on employee competition." Id. at 507 (citing Redmond v. Royal Ford, Inc., 244 Ga. 711, 715, 261 S.E.2d 585, 588 (1979).

On the other hand, Alabama law is very similar to Kentucky law in permitting a court to judicially alter a restraint to the extent it is unreasonable. Id. at 506-07. The Fifth Circuit in Dothan Aviation therefore concluded "that the blue pencil theory of Alabama law, as applied to restrictive covenants ancillary to employment contracts such as the one at issue, contravenes

7

Georgia policy, and would not be applied by Georgia courts." Id. at 507. Accordingly, the Court held that Georgia law must be applied to determine the validity of the covenant, and that under Georgia law the covenant was too broad and was therefore unenforceable.

Another court within the Fifth Circuit followed the ruling of Dothan Aviation in holding that Georgia law would apply over Texas law, which was chosen by the parties in their agreement. Like Dothan Aviation and the case at bar, the court in Kwik-Kopy Corp. v. Barry Bershad & Plaza Printing Co., 1985 U.S. Dist. LEXIS 19562 (N.D. Ga. 1985), was a diversity action seeking the enforcement of a restrictive covenant. Because Texas law was similar to Kentucky and Alabama in that it permitted blue penciling, the Court held that Georgia law would apply. In doing so, it noted:

> Given that the enforcement or non-enforcement of the covenant implicates important and clear policies of the State of Georgia and given that the contract in issue and the effect of the covenant have greater connection to the interests of this state, Georgia has materially greater interest than Texas in the question of the enforceability of the restrictive covenant at issue herein.

Id. at 9.

The reasoning of Dothan Aviation and Kwik-Kopy apply with equal force to the case at bar in which a Court in Virginia is being asked to force a Virginia corporation to fire its Virginia employee and pay damages based on a contract that violates Virginia's public policy. Accordingly, this Court should reject the application of Kentucky law and apply Virginia law to determine the restrictive covenant's enforceability.

**The Restrictive Covenant Relied on By Plaintiff is Unenforceable.**

In the case at bar, the restrictive covenant would prohibit White from "directly or indirectly" being employed by, or rendering "any service to" any person or entity "engaged in rendering any service being conducted or rendered by" Plaintiff at the time of White's

8

termination. It would also prohibit White from being employed by, an independent contractor to, or even a "creditor" of any "competitive business." These restrictions would apply within Plaintiff's "market area," which is not defined.

Under no circumstances or any plausible theory would this restrictive covenant be enforceable under Virginia law. Two recent Virginia Supreme Court cases on such covenants make it clear that the functional restriction, <u>i.e.</u>, the restriction on the former employee's activities, must be limited to "positions competitive with" the former employer, <u>Omniplex</u>, 270 Va. at 250, 618 S.E.2d at 342, and the same type of activity "as that actually engaged in by the former employer." <u>Home Paramount Pest Control Co., Inc. v. Shaffer</u>, 282 Va. 412, 416, 718 S.E.2d 762, 764 (2011).

Although Plaintiff has alleged that White was employed by Plaintiff as an engineer, the covenant Plaintiff seeks to enforce would prohibit White from being employed <u>in any capacity</u> by any entity that engages in any service Plaintiff rendered as of the time of White's termination. Nor could White own stock in any such publicly traded company. Moreover, because the services in which Plaintiff is engaged is determined as of the time White's employment ended, he would be barred from those activities even if Plaintiff ceased offering a particular service previously performed by White. The restrictive covenant also overreaches by providing that White cannot even "indirectly" take the actions it purports to prohibit. <u>See</u> <u>Omniplex</u>, 270 Va. at 250, 618 S.E.2d at 342 (restriction must be on "direct" competition).

The restrictive covenant is likewise overbroad in its geographic scope. By its terms, the restrictive covenant is to apply "within [Plaintiff's] market area," but because this term is not defined, there is no way for White to know where the restrictions apply and where they do not. Moreover, the market area is not limited to areas in which the Plaintiff was doing business at the

9

time of White's termination of employment. Such covenants, which may follow a former employee from place to place are "akin to an amoeba" and "may grow more oppressive without restriction day by day" are invalid. Specialty Mktg. v. Lawrence, 80 Va. Cir. 214, 217 (Hanover County, 2010) (quoting Lawrence v. Business Communications of Va., 53 Va. Cir. 102, 103 (Henrico County, 2000)).

Under the literal terms of the restrictive covenant, White could not work at a car wash where Grubb's owner takes his company truck for detailing. He could not work as a waiter in a restaurant where Grubb was holding a company function. He could not act as a vendor to Grubb for office supplies. He could not even work as a loan officer in a bank extending credit to Grubb. The overreaching breadth of the restriction, combined with the uncertainty of its application, renders this covenant wholly unenforceable under Virginia law.

**Plaintiff's Tortious Interference Claim Fails if the Underlying Contract is not Enforceable**

In Count II of the Complaint, Plaintiff purports to state a claim against Grubb for interference with contract rights. The pleading and proof requirements for such a claim vary depending upon whether the contract allegedly interfered with was terminable at will. To state a claim for interference with a contract that is not terminable at-will, a plaintiff must allege and establish: 1) the existence of a valid contractual relationship; 2) knowledge of the relationship on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship; and 4) resultant damage to the party whose relationship has been disrupted. See Duggin v. Adams, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)). Where a contract is terminable at will, a plaintiff must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed "improper methods." Id. 234 Va. 221

at 226-27, 360 S.E.2d at 836 (quoting Hechler Chevrolet v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985)).

In the case at bar, Plaintiff purports to state a claim for interference with two contracts – one terminable at will, the other not.  The Complaint, however, is devoid of any facts that demonstrate that Plaintiff is plausibly entitled to relief.

Plaintiff claims Grubb interfered with its restrictive covenant with White.  As noted above, however, a cause of action for interference with contract requires the existence of "a valid" contractual relationship.  Where a party has no valid contract, it cannot prove the first element of tortious interference.  See America Online, Inc. v. Greatdeals.Net, 49 F. Supp. 2d 851, 864 (E.D. Va. 1999).  Because the restrictive covenant is invalid and unenforceable under Virginia law, it cannot serve as the basis for an interference with contract claim against Grubb.

With respect to any claim based upon Plaintiff's at-will employment relationship with White, Plaintiff fails to state any facts that allege or by which it may be inferred that Grubb used improper methods to interfere with that relationship.  Although Plaintiff alleges that Grubb knew, or in the exercise of reasonable diligence should have known, that White was subject to a non-compete agreement at the time it hired White, knowledge that White was subject to an invalid restrictive covenant is not an improper method.  Rather, interference is considered "improper" only if it is illegal, independently tortious, or violates an established standard of trade or profession.  Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011).  Because White's restrictive covenant is invalid under Virginia law, it cannot have been an "improper method" to have hired him.

Finally, as the Court recognized in Lewis-Gale Medical Center, LLC v. Alldredge, 282 Va. 141, 153, 710 S.E.2d 716, 722 (2011), "[t]he fact that Virginia recognizes the existence of

11

the tort of intentional interference with a contract does not mean that every contract relationship which is terminated or disrupted through the interference of a third party promoting its own interests will result in tort liability for that party.  Rather, the law provides a remedy in tort only where the plaintiff can prove that the third party's actions were illegal or fell so far outside the accepted practice of that 'rough-and-tumble world' [of business] as to constitute improper methods."  Because the Complaint at issue does not allege any improper methods, it fails to state a claim for interference with White's former at-will employment relationship.

## CONCLUSION

Plaintiff in this case is seeking to enforce an outrageously overbroad restrictive covenant on a Virginia citizen employed in Virginia by a Virginia corporation.  A Virginia court cannot apply the law of Kentucky to rewrite the parties' contract and enforce such a restraint on trade.  Plaintiff's Complaint must therefore be dismissed for failure to state any claim.

                W. O. GRUBB STEEL ERECTION INCORPORATED
                d/b/a W.O. GRUBB CRANE RENTAL


                By: _____/s/ David D. Hopper_____
                        Counsel


David D. Hopper (VSB# 30038)
Timothy S. Feehan (VSB# 34362)
Cook, Heyward, Lee, Hopper & Feehan, P.C.
4551 Cox Road, Suite 210
Post Office Box 3059
Glen Allen, Virginia 23058-3059
Telephone:     (804) 747-4500
Facsimile:     (804) 762-9608
ddhopper@chlhf.com
Feehan@chlhf.com
      *Counsel for Defendant W.O. Grubb Steel Erection Incorporated*

## CERTIFICATE OF SERVICE

       I hereby certify that on March 16, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing (NEF) to the following:

    Charles M. Allen
    William F. Demarest III, Esq.
    Goodman, Allen & Filetti, PLLC
    4501 Highwoods Parkway, Suite 210
    Glen Allen, VA  23060


and I hereby certify that I will mail the document by U.S. mail to the following:

    Will White
    c/o Harris Butler, Esquire
    100 Shockoe Slip, Fourth Floor
    Richmond, Virginia 23219


                                            /s/ David D. Hopper
                                       David D. Hopper, Esquire (VSB #30038)
                                       Attorney for W.O. Grubb Steel
                                       Erection Incorporated
                                       Cook, Heyward, Lee, Hopper & Feehan, P.C.
                                       4551 Cox Road, Suite 210
                                       P.O. Box 3059
                                       Glen Allen, Virginia 23058-3059
                                       Telephone: (804) 747-4500
                                       Facsimile:   (804) 762-9608
                                       e-mail: ddhopper@chlhf.com