IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| EDWARDS MOVING & RIGGING, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| W. O. GRUBB STEEL ERECTION, INC., d/b/a W. O. GRUBB CRANE RENTAL, | ) ) ) | Civil Action No. 3:12CV146—HEH |
| and | ) ) | |
| WILL WHITE, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is an action alleging breach of contract and tortious interference. It is presently before the Court on motions to dismiss filed by both Defendants pursuant to Fed. R. Civ. P. 12(b)(6). The Court will dispense with oral argument because it would not materially aid in the decisional process. For the reasons set forth herein, the motions will be denied.

### I. BACKGROUND

Plaintiff's Complaint contains the factual allegations that follow. Edwards Moving & Rigging, Inc. ("EMR" or "Plaintiff") is a Kentucky-based corporation specializing in the transportation and lifting of heavy equipment and construction components in the mid-Atlantic and mid-Western United States.[1] (Compl. ¶ 6.) EMR hired Defendant Will White ("White"), then a resident of Kentucky, as a Rigging Engineer on February 26, 2007, and

---

[1] Plaintiff claims a market area including Kentucky, Maryland, North Carolina, Pennsylvania, Tennessee, West Virginia, and Virginia. (Compl. ¶ 7.)

promoted him to Senior Engineer in 2009. (*Id.* at ¶ 8.) White ended his employment with EMR on October 4, 2011. (*Id.* at ¶ 21.)

As a Senior Engineer, White was responsible for planning and executing specialized engineering projects requiring the moving of large industrial and construction components. (*Id.* at ¶ 9.) In addition to on-site supervision of existing projects, he conducted engineering analysis to estimate the production costs of potential new projects. (Compl. Ex. A, at 1.) In turn, EMR used those cost projections to formulate competitive bids on prospective projects throughout the region. (*Id.* at ¶ 9.) Of particular relevance here, White assisted with bid preparation and oversight for three EMR projects in Virginia. (*Id.* at ¶¶ 17-18.) Plaintiff alleges that during the course of his employment, White was exposed to EMR's trade secrets pertaining to "the design and fabrication of custom machinery for heavy hauling and rigging and methodology on bidding, staffing, equipment use,[2] and engineering plans of how projects will be managed." (*Id.* at ¶ 18.)

Early in White's tenure with EMR, the parties entered into a Non-Competition, Non-Solicitation and Non-Disclosure Agreement ("the Agreement"). (*Id.* at ¶ 10, Ex. B.) The Agreement prohibited White from working for, either directly or indirectly, any of EMR's competitors within the company's "market area" for a period of two years after the termination of his employment.[3] (Compl. Ex. B at 1.) In the event of a breach, the

---

[2] Specifically, EMR alleges that it trained White on the use cranes and other heavy transportation and rigging equipment. (Compl. ¶ 19.)

[3] Under the terms of the Non-Compete Agreement, White could not:

> (1) Directly or indirectly enter into the employ of or render any service to or act in concert with any person, partnership, corporation or other entity engaged in rendering any service being conducted or rendered by Employer at the time of the termination; or

2

Agreement's "Remedies" term entitled EMR to injunctive relief and specific performance, as well as indemnification. (*Id.* at ¶¶ 12-13.) In anticipation of a later challenge to the contract, EMR also included a "Reasonableness" provision, prohibiting the signatory employee from "rais[ing] any issue of the reasonableness of the [Agreement's] scope or duration." (*Id.* at ¶ 14.) Finally, a "Governing Law" provision required that the "Agreement [] be construed under and governed by the laws of the Commonwealth of Kentucky, excluding its conflicts of law rules." (*Id.* at ¶ 15.)

Following his resignation from EMR in October 2011, White accepted employment as an engineer with W.O. Grubb Steel Erection, Inc. ("Grubb"), a heavy hauling and rigging services company in Richmond, Virginia. (*Id.* at ¶¶ 21-24.) Plaintiff claims that as a result of overlapping geographical territory, EMR and Grubb compete for projects. (*Id.* at ¶¶ 24-25.) Plaintiff further contends that Grubb never inquired as to the pre-existence of a non-compete agreement before hiring White. (*Id.* at ¶ 27.) After learning of White's hiring, EMR contacted Grubb and advised that White's non-compete covenant precluded him from continuing his new employment. Grubb nonetheless refused to terminate its employment relationship with White. (*Id.* at ¶¶ 26-29.) Further, White allegedly posted photographs on his Facebook page in late-October chronicling his work on one of Grubb's projects in Richmond. (Pl.'s Mot. Prelim. Inj. 2., Ex. D at 5).

---

    (2) Directly or indirectly engage in any such competitive business or render any such service on his own account; or
    (3) Become interested in any such competitive business or service directly or indirectly as an individual, partner, member, director, officer, principal, agent employee, or creditor.

(Compl. Ex. B at 1.)

3

Based on the foregoing, EMR filed suit in this Court on February 23, 2012.[4] Plaintiff's two-count Complaint alleges separate claims against Defendants White and Grubb (collectively referred to as "Defendants"). Count One alleges that White breached the parties' non-compete contract by accepting employment with Grubb within two years of his resignation. In Count Two, Plaintiff asserts that Grubb tortiously interfered with EMR's contract rights by inducing White to terminate his employment with EMR and thereby breach his obligation not to compete with EMR.

Subsequently, both Defendants filed motions to dismiss pursuant to Rule 12(b)(6), asserting that Plaintiff's Complaint fails to state an actionable claim.[5] Notwithstanding the Kentucky choice-of-law provision in the parties' contract, Defendants argue that Virginia law should govern this matter. Specifically, Defendants contend that application of Kentucky law would contravene Virginia public policy because: (1) Kentucky law favors restrictive covenants, while Virginia does not, and (2) this Court would be required to redraft, or "blue pencil," the overbroad restrictive covenant in order to enforce it. Applying Virginia substantive law, Defendants assert that the restriction is overbroad and unenforceable, thus rendering Plaintiff's claims unsustainable as a matter of law. Both motions are now ripe for decision.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[4] On the same date, Plaintiff also filed a motion to preliminarily enjoin White's employment with Grubb. The Court will defer decision on that motion until after a hearing.

[5] Defendant White's motion to dismiss, filed on March 16, 2012, expressly adopts the arguments set out in Defendant W. O. Grubb's contemporaneously-filed motion to dismiss.

4

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

In addition, the Court is free to consider documents attached to a motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006) (per curiam); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### III. ANALYSIS

The present dispute turns on the resolution of two issues: first, whether Kentucky or Virginia law should be applied to determine the validity of the parties' contract; and second, whether the agreement's non-compete clause is overbroad as to its geographic scope or the activities covered, thus rendering it unenforceable. As to the first question, Plaintiff maintains that Kentucky law should govern because the parties executed the contract in Kentucky and the contract contains a Kentucky choice-of-law provision. In response, Defendants argue that application of the law of Virginia, the forum state, would be more appropriate. Before addressing the plausibility of Plaintiff's substantive claims, the Court must decide this threshold issue.

A.  **Applicable Law**

A district court sitting in diversity applies the choice-of-law rules of the state in which it sits—here, Virginia. *See Klaxon Co. v Stentor Elec. Manf. Co., Inc.*, 313 U.S. 487, 496 (1941). As a general rule, "[t]he nature, validity and interpretation of [a] contract[]" in Virginia is "the law of the place where [the contract was] made." *Black v. Powers*, 48 Va. App. 113, 128 (2006) (internal citations omitted). However, "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual

6

circumstances." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (explaining that forum selection clauses are presumed valid "unless enforcement is shown by the resisting party to be unreasonable under the circumstances"). Thus, this Court will honor the choice-of-law provision in the contract at issue unless (a) it is "unfair or unreasonable, or [] affected by fraud or unequal bargaining power," *Paul Bus. Sys., Inc. v. Cannon U.S.A., Inc.*, 240 Va. 337, 342 (1990), or (b) there is some indication that the parties did not clearly intend for the designated law to govern the terms of the contract. *See Senture, LLC. v. Dietrich*, 575 F.Supp.2d 724, 727 (E.D. Va. 2008) (citing *Black*, 47 Va. App. at 130).

In this case, the parties executed the underlying non-compete agreement in Kentucky and designated Kentucky law as the contract's "Governing Law." There is no evidence that Defendant White did not intend for Kentucky law to apply, and neither Defendants argues that the application of Kentucky law would be unreasonable. Therefore, pursuant to Virginia's choice-of-law rules, the Court will apply the substantive law of Kentucky, unless doing so would violate Virginia public policy. *Doulgeris v. Bambacus*, 203 Va. 670, 673 (1962).

The Court rejects Defendants' public policy arguments regarding the choice-of-law provision. First, although Defendants correctly observe that Virginia courts will not apply another state's substantive law if it offends Virginia public policy, *see Black*, 47 Va. App. at 129, both Virginia and Kentucky *favor* enforcement of non-complete clauses in employment contracts. *See Paul Bus. Sys.*, 240 Va. at 342; *Lareau v. O'Nan*, 355 S.W.2d 679, 681 (Ky. 1962); *Senture*, 575 F. Supp. 2d at 727.

7

Defendants also point out that Kentucky allows for "blue penciling," while Virginia does not. This difference is not material. Applying the law of a state that allows "blue penciling" is not so repugnant to Virginia public policy as to overcome Virginia's preference for enforcing choice-of-law and forum-selection clauses. *See Jones v. Dent Wizard Int'l Corp.*, No. CL02-386, 2002 WL 32254731, *3 (Va. Cir. Ct. 2002) ("[I]t would not violate any strong public policy of Virginia to [apply the substantive law of a different State,] even though [that State] follows the 'blue pencil' rule and Virginia does not."). Therefore, the Court can find no reason to reject the parties' selected body of law. *Cf. Senture*, 575 F. Supp. 2d at 727 (finding "no public policy in Virginia [prohibiting application of] Kentucky law to determine the validity of the provisions of an employment contract"). Having deemed the application of Kentucky law appropriate, the Court will now evaluate Defendants' motions for dismissal.

## B. Count One – Breach of Contract

To succeed on a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract; (2) a breach of that contract; and (3) damages flowing from the breach. *Metro Louisville/Jefferson Co. Gov't. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Defendants first argue that Count One of Plaintiff's Complaint, alleging breach of EMR's employment contract with White, should be dismissed because the non-compete clause is overbroad in its geographic and substantive scope. Thus, Defendants challenge the first requisite element—the validity of the contract underlying this action.

Kentucky courts have consistently upheld non-competition restrictions if "they are reasonable in scope and in purpose." *Hall v. Willard & Woolsey*, 471 S.W.2d 316, 317 (Ky.

8

1971); *see also Hodges v. Todd*, 698 S.W.2d 317, 318 (Ky. Ct. App. 1985); *Ceresia v. Mitchell*, 242 S.W.2d 359, 363 (Ky. 1951). To be enforceable, a restraint must be "such only as to afford a fair protection to the legitimate interests of the [employer] and not so extensive as to interfere with the interests of the public." *Stiles v. Reda*, 312 Ky. 562, 564 (Ky. 1950). "Reasonableness is to be determined generally by the nature of the business or profession and employment, and the scope of the restrictions with respect to their character, duration and territorial extent." *Hall*, 471 S.W.2d at 317-18.

Defendants first assert that the restrictive covenant at issue is unreasonable because it does not explicitly articulate a distinct, limited coverage area. This argument fails under Kentucky law. Kentucky courts enforce non-compete clauses if their geographic reach is tied directly to the area served by the former employer. *See Hodges*, 698 S.W.2d at 319; *Cent. Adjustment Bureau, Inc. v. Ingram Assocs., Inc.*, 622 S.W.2d 681, 686 (Ky. Ct. App. 1981); *Thomas W. Briggs Co. v. Mason*, 289 S.W. 295, 298 (Ky. 1926) (stating that a "territorial limit is reasonable if it is confined to the territory in which the employer keeps his market or carries on his business"). Here, Defendants concede that the non-compete clause is limited to EMR's "market area," although they dispute whether that "market area" is sufficiently defined. (Grubb Mem. Supp. Mot. Dismiss 9.) That issue is more properly reserved for the summary judgment stage, following discovery. Assuming, for purposes of the present analysis, that the non-compete clause in question is limited to the territory that EMR serves, this Court cannot find its reach unduly broad.

The Court also finds the non-compete clause to be facially reasonable in substance. "[O]n consideration of the subject, nature of the business, situation of the parties and

circumstances of the particular case," a restrictive covenant is reasonable if it "is such only as to afford a fair protection to the legitimate interests of the [employer] and not so large as to interfere with the public interests or impose undue hardship on the party restricted." *Hammons v. Big Sandy Claims Servs., Inc.*, 567 S.W.2d 313, 315 (Ky. Ct. App. 1978) (internal citations omitted). Kentucky courts recognize a legitimate business interest in protecting trade secrets, as well as an employer's investment in an employee. *See Gardner Denver Drum LLC v. Goodier*, No. 3:06CV4-H, 2006 WL 1005161, *9 (W.D. Ky. Apr. 14, 2006) (citing *Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495, 500-01 (E.D. Ky. 1996); *Ingram Assocs.*, 622 S.W.2d at 686). Plaintiff alleges that White "was exposed to trade secrets, including ... design and fabrication of custom machinery for heavy hauling and rigging and methodology on bidding, staffing, equipment use, and engineering plans of how projects will be managed." (Compl. ¶ 18.) Additionally, EMS purportedly trained White "on the use of various industry equipment" while working at EMS. (*Id.* at ¶ 19.)

Taking as true the facts alleged in the Complaint, a restriction that prohibits an engineer for a hauling and rigging company, where he was provided specialized training and was privy to trade secrets, from doing comparable work for a competitor is not *per se* unreasonable on its face. Moreover, even if the Court were to find the restriction unreasonable, Kentucky "courts have adopted a 'blue pencil rule,' [allowing the Court] to reform or amend restrictions in a non-compete clause if the initial restrictions are overly broad or burdensome." *Kegel v. Tillotson*, 297 S.W.3d 908, 913 (Ky. Ct. App. 2009). Because the definition of Plaintiff's "market area" and the determination of whether it

encompasses White's employment with Grubb are disputed factual questions that must be resolved after discovery, Count One cannot be dismissed at this time.

C.   **Count Two – Tortious Interference**

In order to survive a motion to dismiss, a plaintiff claiming tortious interference under Kentucky law must allege facts plausibly demonstrating: "(1) the existence of a contract; (2) Defendant's knowledge of this contract; (3) [that] Defendant intended to cause its breach; (4) [that] Defendant's conduct caused the breach; (5) [that] this breach resulted in damages to Plaintiff; and (6) [that] Defendant had no privilege or justification to excuse its conduct." *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995)). In this case, Plaintiff limited its tortious interference claim in Count Two solely to the non-compete covenant, rather than the employment contract as a whole. (Pl.'s Opp'n Mot. Dismiss 9.) Defendants specifically assert that this claim fails because there is no valid and enforceable contract with which to interfere. As discussed above, applying Kentucky substantive law and resolving all inferences in Plaintiff's favor, the Court presently finds no reason to hold the contract invalid. As such, dismissal of Count Two is inappropriate at this juncture.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motions to dismiss. An appropriate Order will accompany this Memorandum Opinion.

                                 HEH /s/
                                 Henry E. Hudson
                                 United States District Judge

Date: April 23, 2012
Richmond, VA